# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Paul E. Plunkett | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 2747 | **DATE** | 2/20/2002 |
| **CASE TITLE** | WEST AMERICAN INSURANCE CO. vs. DENNIS TOVAR, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   ENTER MEMORANDUM OPINION AND ORDER: Plaintiff's motion for summary judgment is granted in part and denied in part. Plaintiff's motion to strike defendants' sur-response is also denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | FEB 2 1 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | | | |
| TBK | courtroom deputy's initials | 02 FEB 20 AM 11:37 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FEB 2 1 2002

| | | |
|---|---|---|
| WEST AMERICAN INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | No. 01 C 2747<br>Paul E. Plunkett, Senior Judge |
| DENNIS TOVAR, MAUREEN TOVAR, KELLI TOVAR, and COURTNEY E. O'HARA, | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff has filed this action seeking a declaration that the insurance policy it issued to the Tovars provides no coverage for the claims Courtney O'Hara asserts against them and that it has no duty to defend the Tovars in connection with those claims. The case is before the Court on plaintiff's Federal Rule of Civil Procedure 56(c) motion for summary judgment. For the reasons set forth below, the motion is granted in part and denied in part.[1]

### Facts[2]

Plaintiff issued a homeowner's insurance policy to Dennis and Maureen Tovar that provides coverage for any "claim . . . made or . . . suit brought against an 'insured' for damages because of

---

[1] Plaintiff has also moved to strike the sur-response filed by defendants. That motion is denied.

[2] The following facts are undisputed.



'bodily injury' ... caused by an occurrence." (Defs.' Resp. Pl.'s LR 56.1(a)(3) Stmt. ¶ 6; Pl.'s LR 56.1(a)(3) Stmt., Ex. A, Ins. Policy at 13.) The policy defines "occurrence" as an accident that results in bodily injury or property damage. (Pl.'s LR 56.1(a)(3) Stmt., Ex. A, Ins. Policy at 1.) The policy's definition of "insured" includes Dennis, Maureen and Kelli Tovar. (Id. at Declarations & 1.)

The policy also excludes various claims from coverage, including those:

g. Arising out of:

(1) The ownership, maintenance, use, loading or unloading of an excluded watercraft described below;
(2) The entrustment by an "insured" of an excluded watercraft described below to any person; or
(3) Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using an excluded watercraft described below.

Excluded watercraft are those that are principally designed to be propelled by engine power or electric motor, or are sailing vessels, whether owned by or rented to an "insured." This exclusion does not apply to watercraft:

(1) That are not sailing vessels and are powered by:

(a) Inboard or inboard-outdrive engine or motor power of 50 horsepower or less not owned by an "insured";
(b) Inboard or inboard-outdrive engine or motor power of more than 50 horsepower not owned or rented to an "insured";

(Id. at 14.)

On March 26, 1999, Kelli Tovar, Dennis and Maureen's 14 year-old daughter, and Courtney O'Hara were riding Yamaha wave runners when they collided, injuring O'Hara. (Defs.' Resp. Pl.'s LR 56.1(a)(3) Stmt. ¶ 7.)[3] O'Hara filed suit in state court seeking to recover from the Tovars for her

---

[3] Defendants deny that Kelli caused O'Hara's injuries, not that Kelli and O'Hara used wave runners on that date.

-2-

injuries. (See Pl.'s LR 56.1(a)(3) Stmt., Ex. B, State Court Compl.) The Tovars tendered the defense of the suit to plaintiff. (Defs.' Resp. Pl.'s LR 56.1(a)(3) Stmt. ¶ 9.) Plaintiff refused to defend them on the grounds that the watercraft exclusion precluded coverage for all of O'Hara's claims.

## The Legal Standard

To prevail on a summary judgment motion, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). At this stage, we do not weigh evidence or determine the truth of the matters asserted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the non-moving party. Michas v. Health Cost Controls of Ill., Inc., 209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. Id.

## Discussion

In her state court suit, O'Hara asserts three claims against the Tovars: (1) a negligence claim against Kelli; (2) a negligent supervision claim against Dennis and Maureen; and (3) a negligent entrustment claim against Dennis and Maureen. Plaintiff contends it does not have a duty to defend or indemnify defendants for any of these claims. We will address each claim separately.

There is no question that the negligence claim O'Hara asserts against Kelli is a "claim . . . made . . . against an 'insured' for damages because of 'bodily injury' . . . caused by an occurrence."

-3-

(Pl.'s LR 56.1(a)(3) Stmt., Ex. A, Ins. Policy at 13.) The only question is whether that claim falls within the policy's watercraft exclusion.

In relevant part, the watercraft exclusion says that no coverage is provided for claims arising out of the use of an engine-powered craft that is "owned by or rented to an 'insured.'" (Pl.'s LR 56.1(a)(3) Stmt., Ex. A, Ins. Policy at 14.) Defendants argue that the exclusion is ambiguous and, therefore, must be construed against plaintiff. (See Mem. Law Supp. Defs.' Resp. Pl.'s Mot. Summ. J. at 10; Defs.' Sur-Resp. Further Supp. Defs.' Resp. Pl.'s Mot. Summ. J. at 6.) They do not, however, identify any word or phrase that is ambiguous. Rather, they say that the exclusion must be ambiguous because the wave runner was not rented to Kelli, as the plain language of the exclusion requires, and yet plaintiff argues that the exclusion applies. (Defs.' Sur-Resp. Further Supp. Defs.' Resp. Pl.'s Mot. Summ. J. at 6.) This argument is specious, of course, because plaintiff believes that Kelli did, in fact, rent the machine. Thus, it seeks to have the provision enforced exactly as it is written. In any event, there is, as a matter of law, no ambiguity in the watercraft exclusion, which, by its terms, applies only to craft that are "rented to an insured." Community State Bank of Galva v. Hartford Ins. Co., 542 N.E.2d 1317, 1319 (3rd Dist. 1989) (stating that construction of insurance policy is an issue of law and, absent ambiguity, court must enforce plain meaning of a policy).

The coverage dispute, then, boils down to one question: Was the wave runner "rented to" Kelli?[4] Unfortunately, we cannot answer that question on the record before us. The only evidence the parties submitted on this issue is an affidavit from Kelli Tovar, which says: (1) O'Hara

---

[4]The watercraft exclusion also does not apply if the wave runner has "[i]nboard or inboard-outboard engine or motor power of 50 horsepower or less." (Pl.'s LR 56.1(a)(3) Stmt., Ex. A, Ins. Policy at 14.) Though plaintiff has not submitted any evidence on this issue, defendants do not dispute that the wave runner's engine is 50 horsepower or more.

"negotiated the rental of the wave runners"; (2) O'Hara signed Kelli's name on the "sign-up sheet for the wave runners"; and (3) Kelli gave O'Hara money for the rental. (Defs.' Resp. Pl.'s LR 56.1(a)(3) Stmt., Ex. A, Kelli Tovar Aff. ¶¶ 5-7.) Even if these facts are true, and we must assume that they are, they are meaningless without evidence about the person from whom the machine was rented ("the lessor") and the terms and conditions of the rental. To whom did the lessor believe it had rented the wave runner? Why? Whom would it hold liable for any damage to the machine? It may be, as defendants suggest, that the lessor designated as responsible parties only those individuals who personally signed the sign-up sheet and paid the rental fee. It is equally plausible, however, that: (1) the lessor designated anyone whose name appeared on the sign-up sheet, whether or not they had personally signed it, as a responsible party; (2) the lessor designated as a responsible party any adult whose name appeared on the sign-up sheet and the parent of any minor whose name appeared there; (3) the sign-up sheet served only as a waiting list for the machines and had no other significance; (4) the lessor was a hotel that vested responsibility for the wave runner in the person who had rented the hotel room, regardless of the name that appeared on the sign-up sheet. In other words, absent evidence about the lessor and the terms of the rental, we cannot determine whether Kelli, in fact, rented the wave runner and, therefore, whether the negligence claim asserted against her falls into the watercraft exclusion.

Whether plaintiff has a duty to defend this claim, however, is another question. Under Illinois law, an insurer's duty to defend "depends on the allegations of the complaint and the provisions of the insurance policy." State Farm Fire & Cas. Co. v. Mann, 526 N.E.2d 389, 393 (1st Dist. 1988). "An insurer may not refuse justifiably to defend an action against its insured unless it is clear from the face of the underlying complaint that the allegations fail to state facts which bring

-5-

the case within, or potentially within, the policy's coverage." Continental Cas. Co. v. McDowell & Colantoni, 668 N.E.2d 59, 63 (1st Dist. 1996). Defendants contend that plaintiff has a duty to defend the negligence claim asserted against Kelli because O'Hara alleges in that count that Kelli "was operating a . . . rented Yamaha wave runner," not that the machine was *rented to* her. (See Defs.' Sur-Resp. Further Supp. Defs.' Resp. Pl.'s Mot. Summ. J. at 3; Pl.'s LR 56.1(a)(3) Stmt., Ex. B, State Court Compl. ¶ 5.) In the negligent supervision count, however, O'Hara says that Kelli "leased the wave runner" and that her parents permitted her to lease it. (See Pl.'s LR 56.1(a)(3) Stmt., Ex. B, State Court Compl. ¶¶ 9, 11.) Read as a whole, as it must be, O'Hara's complaint alleges that the wave runner was rented to Kelli. See Altaf v. Hanover Square Condo. Ass'n No. 1, 544 N.E.2d 1032, 1036 (1st Dist. 1989) (examining allegations of the underlying suit "in the context of the complaint as a whole" and holding that claims fell within exclusionary clause); United Fire & Cas. Co. v. Jim Maloof Realty, Inc., 435 N.E.2d 496, 498 (3rd Dist. 1982) (noting, in duty to defend case, that "complaint must be read as a whole to assess its true nature"). Because the underlying complaint alleges facts that bring the negligence claim against Kelli squarely within the policy's watercraft exclusion, plaintiff has no duty to defend it.

Plaintiff also seeks a declaration that it has no duty to indemnify the Tovars for the negligent supervision claim. In plaintiff's view, the elder Tovars' alleged negligence is inextricably entwined with Kelli's. Thus, plaintiff argues, the negligent supervision claim arises from the use of an excluded watercraft and falls outside of the policy's coverage. (Mem. Law Supp. Pl.'s Mot. Summ. J. at 4.) Defendants, on the other hand, contend that the negligent supervision claim is wholly independent of the direct negligence claim. Consequently, they say, the negligent supervision claim is covered even if the direct negligence claim is not.

The Illinois Supreme Court has not yet decided whether, or under what circumstances, a negligent supervision claim "arises out of" an excluded act. Our task, therefore, is "to predict what [that] court would do if presented with [this] issue." Todd v. Societe Bic, S.A., 21 F.3d 1402, 1412 (7th Cir.1994). "[I]ntermediate appellate court decisions," our court of appeals has noted, "constitute the next best indicia of what state law is." Id. (internal quotation marks and citation omitted). Thus, we will look to the state appellate court decisions for guidance.

The appellate court first addressed this issue in United States Fid. & Guar. Co. v. State Farm Mut. Auto Ins. Co., 437 N.E.2d 663 (1st Dist. 1982) ("USF&G I"). The insurance policy in that case was issued to a day care center and contained an exclusion for claims arising out of the operation of an automobile. A child who was injured when she fell from the day care center's station wagon sued the center for, among other things, negligent supervision. USF&G maintained that it had no duty to defend that claim because it fell within the policy's automobile exclusion. The court disagreed, saying:

> [T]he complaint alleges negligent acts . . . such as the failure to adequately supervise the children and the negligent operation of the day care center . . . . [that] are separate and distinct from any allegations relating to the negligent operation of the automobile. . . . In other words, if the liability of an insured arises from negligent acts which constitute non-auto related conduct, the policy should be applicable regardless of the automobile exclusion or the fact that an automobile was involved in the occurrence. If an occurrence is caused by a risk included within the policy, coverage is not vitiated merely because a separate excluded risk constitutes an additional cause of the occurrence.

Id. at 666-67.

Subsequently, the trial court held that the policy provided coverage for the negligent supervision claim, a decision that USF&G appealed. USF&G argued that the claim fell within the automobile exclusion because the claimant's injuries "resulted from" and "could not have occurred

-7-

without the operation or use of the station wagon." United States Fid. & Guar. Ins. Co. v. State Farm Mut. Cas. Co., 504 N.E.2d 123, 125 (1st Dist. 1987) ("USF&G II"). Once again, the appellate court rejected the argument, saying:

> USF&G's argument overlooks the fact that there may be more than one proximate cause of an injury. . . . If a proximate cause of an injury is within the included coverage of an insurance policy, the included coverage is not voided merely because an additional proximate cause of the injury is a cause which is excluded under the policy. Thus, in order for an injury to be excluded from coverage under an insurance policy, the injury must have been caused solely by a proximate cause which is excluded under the policy.

Id.

Shortly thereafter, the same court decided Mann. At issue in that case was the scope of a provision in a homeowner's policy that excluded coverage for claims arising out of the use of a motor vehicle. The motor vehicle at issue was a dirt bike, from which the victim was thrown when the insured's son lost control over it. The victim filed suit against the insureds alleging not only that their son had operated the bike negligently, but that they had negligently supervised him as well. Like plaintiff, the insurer in Mann argued that the motor vehicle exclusion excluded not only the direct negligence claim, but the negligent supervision claim as well. This time, the court agreed:

> Under a negligent supervision theory, the defendant would have to establish that Robert Mann negligently supervised his son, James Mann, and that such negligence proximately caused McNamara's injuries. Thus, the defendant here would necessarily have to prove that it was Mann's negligent supervision of his son involving the operation of the dirt bike that caused the injuries. Under those circumstances, we find that the trial court properly interpreted [the insurance policy] to exclude coverage for McNamara's injuries which were caused solely by the instrumentality excluded under the policy, namely the dirt bike.

526 N.E.2d at 393 (citations omitted). The Mann court distinguished USF&G I by saying: "[T]he complaint there alleged negligent acts . . . which were separate and apart from the alleged negligence

involving the center's vehicle. In fact, the [USF&G] court limited its holding to cases where the actionable event could be proved independent of the excluded motor vehicle." Id.

That court reached a similar conclusion in Allstate Ins. Co. v. Pruitt, 532 N.E.2d 401 (1st Dist. 1988), another case involving a motor vehicle exclusion in a homeowner's policy. The underlying suit in Pruitt stemmed from an accident involving the insured's son and a mini-bike. As in Mann, the claimant in Pruitt, asserted not only a direct negligence claim against the insured's son, but a negligent supervision claim against the insured as well. Like the Mann court, the Pruitt court concluded that the negligent supervision claim fell within the motor vehicle exclusion:

> [C]ount II . . . for negligent supervision merely restated the allegations of count I against Pruitt, Jr., which charged the minor with various acts of negligence in his operation of the vehicle. Count II then concluded with the assertion that Pruitt Sr.'s negligent failure to supervise and control that conduct, *i.e.*, the enumerated acts of negligent operation, was a direct and proximate cause of his injuries. Thus, despite defendants' assertions to the contrary, Anderson's theory of recovery against Pruitt, Sr. was based solely on the minor's ownership and operation of the mini-bike off the residence premises. This conduct and the instrumentality involved fall clearly within the exclusion clause.

Id. at 404; cf. Insurance Co. of N. Am. v. Krigos, 553 N.E.2d 708, 712 (1st Dist. 1990) (stating that negligent supervision claim did not fall into vehicle exclusion, but holding that there was no coverage because the vehicle negligence "severed the causal connection between any negligent supervision" by the insured and the claimant's injuries).[5] Moreover, just as the Mann court did, the

---

[5]Subsequently, another panel of the same court described Krigos as "troublesome" for its importation of tort law concepts into a contract case. Oakley Transp., Inc. v. Zurich Ins. Co., 648 N.E.2d 1099, 1105 (1st Dist. 1995). Nonetheless, the Oakley court also concluded that a negligent supervision claim stemming from a car accident fell into an automobile exclusion. In the court's words:
> The commonly understood meaning of the terms 'arising out of' the 'use' in this context clearly preclude coverage directly for the employee's negligent driving of a motor vehicle. Similarly, the plain language of the 'auto' exclusion precludes coverage for Oakley's negligent supervision. Such supervision also 'arises' out of

Pruitt court distinguished USF&G I on the grounds that "the underlying complaint [in that case,] described acts of alleged negligence and theories of recovery wholly independent from those relating to the allegedly negligent operation of the automobile." Id. at 403-04.

In 1996, however, the court changed course in McDowell & Colantoni. The underlying suit in that case stemmed from a law firm partner's misappropriation of client funds. When the client sued the firm for failing to supervise adequately its clients' accounts, the firm's insurer sought a declaration that it had no duty to defend. In the insurer's view, the negligence claims fell within the policy's dishonesty exclusion, which excluded coverage for any claim arising out of any "dishonest, fraudulent criminal or malicious act or omission." 668 N.E.2d at 63. Because the negligence claims were inseparable from the misappropriating partner's dishonest act, the insurer argued that they were excluded.

The court disagreed:

> 'But for' causation, not necessarily proximate causation demonstrates that the Law Firm's negligence in supervising clients' trust accounts began some time before the Watkins' matter and was not dependent upon Colantoni's misappropriation of the funds; to the contrary, the dishonest act and Watkins' injury would not have occurred if the Law Firm had supervised the accounts properly before the Watkins' check was ever received and deposited. Defendants' negligence, therefore, was independent of Colantoni's misappropriation.

Id. at 64-65 (citations omitted); cf. Tuell v. State Farm Fire & Cas. Co., 477 N.E.2d 70, 74 (2d Dist. 1985) (holding that insurer had duty to defend negligent supervision claim arising out of motorcycle

---

the employee's 'use' of the vehicle because the negligent supervision is derivative of, and dependent upon, the underlying negligent use of the vehicle. Oakley's negligent supervision simply cannot be divorced from its employee's negligent driving.

Id. at 1107.

accident despite policy's motor vehicle exclusion because "allegations of negligent entrustment and supervision are separately recognized causes of action."). The court dismissed the tension between its decision and that in Pruitt by saying:

> [W]e read the Pruitt decision as having been based on allegations that the injury there arose *solely* from a cause specifically excluded by the policy at issue. That situation does not exist in the case *sub judice* which does not seek recovery for Colantoni's criminal acts, which would be excluded, but for the Law Firm's negligent omissions, which are not excluded.

Id. at 64.

After reviewing these opinions, we are convinced that the supreme court would adopt the reasoning that is implicit in USF&G and was made explicit by the Mann and Pruitt courts: negligent supervision claims "arise out of" excluded acts only if the failure to supervise was, or could have been, the sole cause of the alleged injury. Such was the case in USFG. The claimant did not have to prove that there was vehicle negligence, the excluded claim, to prevail on her negligent supervision claim. On the contrary, the claimant's injuries in that case could have been caused by the alleged negligent supervision, (i.e., the center's failure to prevent another child from pushing her from the car), even if no vehicle negligence, (i.e., the driver's failure to fasten the claimant's seat belt, lock the car doors or drive at a safe speed), had occurred.

The claimants in Mann and Pruitt, on the other hand, were not, and could not have been, injured by the alleged negligent supervision alone. If the insureds had breached their duty to supervise (i.e., allowed minors to operate motorized bikes unassisted and without adult supervision), but their children had operated the bikes with care, no injury would have occurred. In other words, the failure to supervise may have been one cause of the claimants' injuries, but it was not a sufficient cause of those injuries. Because the claimants had to prove that there was vehicle negligence, which

the policies excluded, to prevail on their negligent supervision claims, the courts concluded that the negligent supervision claims arose out of the use of a vehicle. Mann, 526 N.E.2d at 393; Pruitt, 532 N.E.2d at 404.

The one case that squarely rejects this principle is McDowell & Colantoni.[6] That court held that a misappropriation claim against the lawyer who stole the claimant's funds fell into the dishonesty exclusion of the law firm's insurance policy, but the negligence claim, which was predicated on the law firm's failure to prevent the misappropriation, did not. Because the misappropriation would not have occurred but for the firm's negligence, the court said, the negligence claim was independent of the misappropriation. 668 N.E.2d at 64-65.

With all due respect to that court, we think it reached the wrong conclusion. The negligence may have fostered the misappropriation, but that does not make it an independent claim. The injury that makes the negligence actionable, the client's loss of funds, is wholly dependent on the misappropriation. Take away the misappropriation and there is no negligence claim, just a harmless breach of duty. In short, we do not believe that the McDowell & Colantoni court's "but for causation" test accurately determines when a negligence claim arises from an excluded act. Rather, it permits plaintiffs to recover for excluded claims by recasting them as claims for negligence, a result we do not believe the Illinois Supreme Court would sanction.

---

[6]Though Tuell and West Am. Ins. Co. v. Hinze, 843 F.2d 263 (7th Cir. 1988) also held that negligent supervision claims were not excluded, both did so without fully examining the principle discussed here. The Tuell court, without performing any analysis at all, concluded that the claim was not excluded because negligent supervision is a "recognized cause[] of action" separate from negligence. 477 N.E.2d at 74. In Hinze, which was decided before Mann and Pruitt, the court rejected this principle because it "found no Illinois case law" that applied the theory to negligent supervision claims. 843 F.2d at 267.

Our analysis of this issue echoes that of our court of appeals in Transamerica Ins. Co. v. South, 975 F.2d 321 (7th Cir. 1992), a case decided a few years before McDowell & Colantoni. Transamerica had issued an errors and omissions policy to an investment firm that employed South. The policy excluded coverage for claims arising out of the insolvency or bankruptcy of any organization in which the firm invested client funds. When South invested client funds in an insolvent company, the clients sued to recover their investments. Transamerica sought a declaration that the claims were not covered under the policy. Relying on the multiple proximate cause language of USF&G II, see 504 N.E.2d at 125, the firm argued that the claims should be covered because the claimants' injuries were caused not only by the insolvency, which was excluded under the policy, but by South's negligence, which was not.

In the Seventh Circuit's view, Pruitt "limit[ed] the applicability of the USF&G principle to cases in which the two causes of injury are wholly independent of one another." 975 F.2d at 330. The court agreed that South's negligence was a second cause of the claimant's injuries, but said:

> [T]hese two causes are not wholly independent: Mr. South's negligence depends upon the insolvency of First Columbia. If First Columbia were healthy and solvent, Mr. South would not be liable for negligence; even if he breached a duty owed to his clients, that breach would have caused no injury and thus would not support a claim for recovery. Thus, because the excluded cause predominates, this case is more closely analogous to Pruitt than to the USF&G cases. As did the Illinois Appellate Court in Pruitt, we conclude that, under the terms of the policy, the insurer has no duty to defend or indemnify the insured.

Id. at 330-31.

In sum, we think that the Illinois Supreme Court, if faced with the issue, would endorse the reasoning of USFG I & II, Mann and Pruitt and hold that negligent supervision claims arise out of excluded acts only if the failure to supervise was, or could have been, the sole cause of the claimant's

injury. In this case, as in Mann and Pruitt, the elder Tovars' alleged negligence alone could not have caused O'Hara's injuries. Thus, if the negligence claim against Kelli arises out of the use of an excluded watercraft, an issue that we cannot determine on this record, the negligent supervision claim against her parents does as well.

The same is true for the negligent entrustment claim. To prevail on this claim, O'Hara must show not only that the elder Tovars negligently entrusted the wave runner to Kelli, but that Kelli's negligence with it caused O'Hara's injuries. Allstate Ins. Co. v. Panzica, 515 N.E.2d 1299, 1301 (3rd Dist. 1987). In other words, O'Hara's negligent entrustment claim can succeed only if she has proof that her injuries were caused by Kelli's negligence. If, as plaintiff contends, Kelli's negligence is excluded from coverage, Illinois law deems the negligent entrustment claim to be excluded as well. Id. at 1301-02 (if instrumentality is excluded, negligent entrustment of instrumentality is also excluded because "an injury resulting from the use of the instrumentality is a necessary element of the cause of action."); Krigos, 553 N.E.2d at 710 (same); State Farm Fire & Cas. Co. v. McGlawn, 404 N.E.2d 1122, 1124 (4th Dist. 1980).

In this case, however, we need not resort to common law to reach that conclusion because the Tovars' policy contains an express "entrustment" exclusion. According to the policy, no coverage is provided for claims arising out of "[t]he entrustment by an 'insured' of an excluded watercraft . . . to any person." (Pl.'s LR 56.1(a)(3) Stmt., Ex. A, Ins. Policy at 14.) Thus, if the negligence claim asserted against Kelli is excluded, the plain language of the policy also excludes the negligent entrustment claim asserted against her parents.

Plaintiff does not, however, have a duty to defend the Tovars against the negligent supervision or entrustment claims. As we stated above, O'Hara's complaint affirmatively alleges

that the wave runner was rented to Kelli. Because the allegations of the underlying complaint state facts that place the negligence claim, and therefore the negligent supervision and entrustment claims as well, outside of the policy's coverage, plaintiff has no duty to defend them. McDowell & Colantoni, 668 N.E.2d at 63.

## Conclusion

For the reasons set forth above, there is no genuine issue of material fact on plaintiff's claim that it has no duty to defend the Tovars against the claims asserted against them by O'Hara, and plaintiff is entitled to judgment, as a matter of law, declaring that it has no duty to defend. Plaintiff's motion for summary judgment on that claim is, therefore, granted. There are, however, genuine issues of material fact on plaintiff's claim that it has no duty to indemnify the Tovars for the claims O'Hara asserts against them. Plaintiff's motion for summary judgment on that claim is, therefore, denied. Plaintiff's motion to strike defendants' sur-response is also denied.

**ENTER:**

_[signature]_
**UNITED STATES DISTRICT JUDGE**

**DATED:** 2-20-09